KARIN G. PAGNANELLI (SBN 174763)
kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

LUCY H. PLOVNICK (*pro hac vice*)
lhp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
1818 N. Street NW, 7th Floor
Washington, DC 20036
Telephone: (202) 355-7900
Facsimile: (202) 355-7899

Attorneys for Defendant
Bandai Namco Entertainment America Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SAMUEL JESSE GARCIA individually and on behalf of all others similarly situated,

Plaintiff,

v.

BANDAI NAMCO ENTERTAINMENT AMERICA INC.,

Defendant.

CASE NO. 8:25-cv-00967-DOC (PVC*x*)

Judge: Hon. David O. Carter

*Discovery Document: Referred to Magistrate Judge: Hon. Pedro V. Castillo*

**JOINT STIPULATION ESTABLISHING ELECTRONIC PROTOCOL**

Filed: May 7, 2025

**STIPULATED ELECTRONIC DISCOVERY PROTOCOL**

The parties, through their counsel, have stipulated and agreed to give effect to this Stipulation Establishing Electronic Discovery Protocol ("ESI Protocol") as set forth below to facilitate discovery.

Except as expressly stated, nothing in this ESI Protocol affects the Parties' discovery obligations under the Federal or Local Rules. This ESI Protocol does not address or resolve any other objection to the nature or scope of the Parties' respective discovery requests. The mere production of ESI shall not itself constitute a waiver for any purpose, including with respect to any objection concerning such ESI.

## I. DEFINITIONS

**A. "Electronically stored information"** or **"ESI"** as used herein means and refers to computer-generated information or data of any kind, stored in or on any storage media as defined in this section.

The Parties agree to meet and confer regarding any disputes relating to relevancy, proportionality, or production issues before submission of any disputes to the Court.

The Parties further agree that the Parties need not search sources that are not reasonably accessible because of undue burden or cost (*e.g.*, back-up tapes, floppy disks, optical disks, or similar formats primarily for back-up or disaster recovery purposes).

**B. "Native data format"** means and refers to the format of ESI in which it was generated and/or as used by the producing party in the normal course of its business and in its regularly conducted activities.

**C. "Metadata"** means and refers to information about information or data about data, and includes, without limitation: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the

characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Examples of metadata associated with a particular file include, e.g., "location," "size," "date created," "date modified," and "date accessed."

**D.** **"Document(s)"** includes electronic information of any kind, including without limitation writings, drawings, presentations, spreadsheets, graphs, charts, photographs, notes, sound recordings, images, and other data, data records or data compilations—stored in any medium (including cloud-based or cloud sourced media) from which information can be obtained.

**E.** **"Storage Media"** means an object or device, real or virtualized, including but not limited to a disc, tape, computer, mobile device, smartphone, iPad, Cloud (public, private or hybrid) or other device, or other similar means of communication, on which data is or was stored.

**F.** **"Requesting Party"** means a Party that requests the production of documents that include ESI (e.g., through service of a discovery request).

**G.** **"Producing Party"** means a Party that produces ESI, whether voluntarily or in response to a discovery request.

## II. GENERAL PROVISIONS

**A.** **Cooperation**. The Parties agree that they will cooperate in good faith to conduct ESI discovery, including with respect to the disclosure and formulation of appropriate search methodology, search terms and protocols, and custodial sources to be searched. If a search results in an unduly burdensome number of identified documents, the Parties shall meet and confer and cooperate to reduce this number by narrowing the search terms, date range, or other search restrictions until the yield of documents is reasonable. The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate. Nothing in this

protocol, or the subsequent designation of any search terms, shall operate to limit a Party's production obligations under applicable law, or limit the ability to agree to meet and confer to modify the search terms, criteria, or methodologies as information is obtained and utilized in the course of the litigation.

**B. Proportionality**. The Parties agree to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information. This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

**C. Preservation of Discoverable Information**. Each Party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control. Absent a showing of good cause by the Requesting Party, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control. The Parties agree that back-up systems and systems no longer in use that cannot be accessed are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed or produced. Among the sources of data the Parties agree are not reasonably accessible, the Parties agree not to search or collect the following: backup media, digital voicemail, automatically saved versions of documents, online access data (i.e., temporary internet files, histories, caches, cookies, etc.), random access memory, and employees' personal electronic devices. By preserving Documents and ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

**D. Privilege**. The Parties contemplate exchanging privilege logs. The Parties agree that attorney-client privileged or attorney work-product materials between counsel of record and their respective clients created on or after May 7, 2025 need not be included on any privilege log. Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d); the provisions of Fed. R. Evid. 502(b) do not apply.

**E. LIAISON**

Each party shall designate or make available, an individual or individuals as eDiscovery Liaison(s) who must:

a. Be prepared to meet and confer on eDiscovery-related matters and to participate in eDiscovery dispute resolution;
b. Be knowledgeable about the Party's eDiscovery efforts;
c. Be, or have reasonable access to those who are knowledgeable about the technical aspects of eDiscovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

## III. SEARCH METHODOLOGIES

The Parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology, search terms and protocols, and custodial sources to be searched. The parties agree to meet and confer within seven days of the filing of this stipulation, to continue discussing, *inter alia:*

Search methodology(ies) to be utilized;

Disclosure and selection of all search terms, including search terms based upon actual terminology used in the producing party's documents; and

Disclosure and selection of custodial and non-custodial sources to be searched.

The Parties will agree to a reasonable number of custodians. The Parties agree to continue meeting and conferring in good faith regarding who those custodial sources will be.

The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate. Nothing in this protocol, or the subsequent designation of any search terms, shall operate to limit a Party's production obligations under applicable law, or limit the ability to agree to meet and confer to modify the search terms, criteria, or methodologies as information is obtained and utilized in the course of the litigation.

This ESI Protocol does not address or resolve any other objection to the scope of the Parties' respective discovery requests.

The Producing Party has the right to choose and disclose its chosen search methodology, which may include keyword searches, technology assisted review (TAR), or other advanced analytics. If TAR is used, the Producing Party shall disclose the tool/vendor and validation measures (e.g., recall and precision metrics). Email threading may be applied to produce the most inclusive version only, unless lesser threads contain unique attachments or BCC recipients. NIST filtering may be used to remove non-user generated files. No on-site inspection of systems shall occur without good cause shown.

## IV. SOURCE CODE

This ESI Protocol does not affect the handling of source code under the Stipulated Protective Order. For any produced source code, the Producing Party shall disclose the programming language and version used. For source code materials considered or relied upon by either Party's expert, the Producing Party shall disclose the complete file path(s) and line numbers cited or relied upon.

## V. DATABASES/STRUCTURED DATA

The Parties shall meet and confer regarding the production of structured data from databases or other repositories. Such data shall be produced in a reasonably usable format (e.g., CSV, Excel), or in alternative formats if licensing or hardware issues prevent native production.

## VI. FORMAT OF PRODUCTION

### A. General Production Formats

With the exception of native files (as discussed below), all ESI shall be produced as single-page TIFF images, created with a resolution of at least 300 dots per inch (dpi), unless otherwise required in this ESI Protocol, or agreed upon by the Parties. Color documents may be produced in JPG format in lieu of TIFF images; where produced, color JPG files should also be provided with a resolution of at least 300 dpi. Each TIFF or JPG image shall be branded with sequential Bates numbers and appropriate confidentiality designations. Each TIFF or JPG image filename shall correspond to the Bates number associated with that page. TIFF or JPG files shall show all text and images that would be visible to a user of the ESI documents. Hidden content (e.g., tracked changes, comments, or embedded formulas) shall be expanded and imaged where possible.

The Parties' designations of ESI as "Confidential" or "Attorneys' Eyes Only" shall be governed by the stipulated confidentiality/protective order to be

entered in this action. Additionally, for any ESI designated "Confidential" or "Attorneys' Eyes Only" pursuant to the stipulated confidentiality/protective order, the designation shall be shown both on the face of all TIFFs and JPEGs pertaining to such item/document (including the slip sheet of any document produced in native format), and in the appropriate data field in the load file.

Where the original of a produced document is in color, and color is material to the interpretation of the document, reasonable requests for the production of specific documents in color will not be denied. The Parties agree to respond to reasonable and specific requests for the production of higher resolution or color images on a document-by-document basis. Nothing in this ESI Protocol shall preclude a Producing Party from objecting to such requests as unreasonable in number, timing or scope, provided that a Producing Party shall not object if the document as originally produced is illegible or difficult to read. The Producing Party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the Parties will meet and confer in good faith to try to resolve it.

**B. Database Load/Cross-Reference and Text Files**

A production shall be provided with (a) a Unicode delimited data file (.dat), and (b) an Opticon image load file (.opt). The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. Each TIFF in a production must be referenced in the corresponding image load file. In addition to the metadata fields identified for production in Appendix 1 below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

The document level Unicode described above shall contain extractable text from the ESI. For electronic files without extractable text (e.g. scanned paper documents, PDF files without text, etc.) or documents produced with redactions, the Producing Party shall use optical character recognition software ("OCR") to

generate text for the document. OCR generated text shall be provided for all documents without extractable text in the original native file unless the document is handwritten notes, drawings, or is otherwise not easily convertible into a searchable format. The filename for the multi-page text file shall correspond to the beginning Bates number of the document.

**C. Metadata**

The Parties agree that load files should include, where applicable, the information listed in Appendix 1, Table of Metadata Fields, set forth below. However, the Parties are not obligated to include metadata for any document that does not contain such metadata in the original with the exception of Bates fields, confidentiality designation, and custodian. The Parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.

**D. Native Files**

All spreadsheets (.XLS, .XLSX, .CSV, etc.) and audiovisual files unable to be imaged (.MPEG, .MP3, .WAV, etc.) shall be produced in native format. Any file produced in native format should be named to match the beginning Bates number of their corresponding entries in the database load files. Additionally, every file produced natively should be accompanied by a Bates-stamped and confidentiality-stamped TIFF placeholder indicating the document was provided in native format. A Party may elect to produce any other files in native format at its discretion. If particular documents warrant a different format, including native file formats or colored documents, the parties will cooperate to arrange for the mutually acceptable production of such documents. A Party requesting to receive a document in its native format shall provide an explanation of the need for native file review on a document-by-document basis by identifying the document at issue by Bates number. The Producing Party shall not unreasonably deny any such request. If the Parties are unable to reach an agreement with regard to requests for

additional documents in native-file format, the Parties reserve the right to seek relief from the Court.

**E. Production of Hardcopy Documents**

All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format. In particular, documents that exist solely in physical hardcopy format shall be converted/scanned to images and an associated text file and produced following the same protocols outlined above. Paper documents should be produced as they are found. For example, a memo of 10 pages should be produced as a single file with 10 pages. If the same memo is stapled or bound to an attachment, the attachment and the memo should form a single scanned document. Family relationships shall be preserved with the parent document and its attachments Bates numbered sequentially and family boundaries captured and produced in the metadata fields. The metadata shall identify the custodian from whom the document was collected. The scanned image ".tif" files shall be subject to an Optical Character Recognition ("OCR") process with the OCR produced provided as the text file using the extension "TXT".

**F. Parent and Child Emails**

The Parties shall produce email attachments sequentially after the parent email. With respect to an email chain, the Parties are permitted to produce the longest unique chain and the Parties do not need to separately produce the lesser-included emails unless those lesser-included emails include unique attachments not included in the longest chain or contain a BCC recipient not shown in the longest unique chain. If a lesser-included email includes a unique attachment, then the lesser-included email must be separately produced with the attachment.

**G. Duplicates**

To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) reside within a party's data set, each party shall

produce only a single copy of a responsive document. This de-duping should be done only on exact duplicative documents, and only documents where the main parent document and the attachments are exactly the same will be considered exact duplicates.

**H. Production Media and Encryption of Productions**

Unless otherwise agreed, the Parties have agreed that all electronic materials produced in this action will be exchanged electronically via secure FTP, or to the extent secure FTP is not feasible due to the size of a production or the highly confidential contents of a production, such materials shall be produced on CD, DVD, flash drive or hard drive. If the Producing Party so desires, it can encrypt or password protect the production using, for example TrueCrypt, or another commonly available method. In such a case, the Producing Party shall forward the password to decrypt the production data separately from the CD, DVD, or external drive on which the production data is saved.

## V. OBJECTIONS TO ESI PRODUCTION

If any formatting requirements or other specifications agreed to in this protocol are later determined by the Producing Party to be not feasible, or unduly burdensome or unreasonably costly, the Parties will promptly meet and confer in order to attempt to agree upon appropriate modifications to the protocol before presenting any such issue to the Court.

Notwithstanding anything contained herein to the contrary, a Producing Party shall not produce ESI in a format not requested or agreed to by the requesting party. If an issue arises, the issue will only be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet and confer process.

## VI. AMENDMENTS TO THE ESI PROTOCOL

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

DATED: January 27, 2026

KARIN G. PAGNANELLI
LUCY H. PLOVNICK
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Karin G. Pagnanelli*
Karin G. Pagnanelli
Lucy H. Plovnick (*pro hac vice)*
Attorneys for Defendant
Bandai Namco Entertainment America, Inc.

DATED: January 27, 2026

MICKEL M. ARIAS
CRAIG S. MOMITA
M. ANTHONY JENKINS
ARIAS SANGUINETTI WANG & TEAM LLP

By: */s/ Craig S. Momita*
Mickel M. Arias
Craig S. Momita
M. Anthony Jenkins
Isaac Manoff
Attorneys for Plaintiff
Samuel Jesse Garcia

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

DATED:

____________________________
Hon. Pedro V. Castillo
United States Magistrate Judge

**<u>Attestation Regarding Signatures-Local Rule 5-4.3.4(a)(2)(i)</u>**

I, Karin G. Pagnanelli, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: January 27, 2026

*<u>/s/ Karin G. Pagnanelli</u>*
Karin G. Pagnanelli

## APPENDIX 1: Table of Metadata Fields

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-files/Attachments) |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document |
| EndDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |
| EndAttach | Unique ID (Bates number) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |
| Pages | Pages | Number | The number of pages for an email. | The number of pages for a document. |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-files/Attachments)** |
|---|---|---|---|---|
| Confidential Designation | | Text | The confidential designation endorsed on the document. If no designation is present, a default value of “None” will be coded. | The confidential designation endorsed on the document. If no designation is present, a default value of “None” will be coded. |
| DateSent | | Date (MM / DD / YYYY format) and Time (HH:MM:SS AM/PM format) | The date and time the email was sent. | For email attachments, the date the parent email was sent. |
| CreateDate | | Date (MM / DD / YYYY format) and Time (HH:MM:SS AM/PM format) | Date and time the file was created. | Date the file was created. |
| ModDate | | Date (MM / DD / YYYY format) and Time (HH:MM:SS AM/PM format) | Date and time the file was last modified. | Date the file was last modified. |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-files/Attachments)** |
|---|---|---|---|---|
| Author / From | Author Display Name / Sender | Paragraph | The display name of the author or sender of an email. | The name of the author as identified by the metadata of the document. |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax recipients). |
| CC | CC | Paragraph | The display name of the copyee(s) of an email. | |
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of an email. | |
| Title | Title | Paragraph | The subject line of an email. | Title of the document. |
| Subject | Subject (e-mail) | Paragraph | The subject line of an email. | The subject of a document from entered metadata. |
| Custodian | Custodian | Paragraph | The custodian of an email. | The custodian of a document. |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-files/Attachments)** |
|---|---|---|---|---|
| DOCTYPE | DOCTYPE | Text | Document type as identified by metadata associated with the native document indicating the application that created the native document (e.g., Google Docs, Microsoft Word 6.0, Gmail, Outlook Email, etc.). | Document type as identified by metadata associated with the native document indicating the application that created the native document (e.g., Google Docs, Microsoft Word 6.0, Gmail, Outlook Email, etc.). |
| MD5Hash | MD5Hash | Text | Identifying value of an electronic record that is used for deduplication. MD5 or SHA1 hash algorithms may be used but must be consistent throughout the productions and communicated to counsel. | Identifying value of an electronic record that is used for deduplication. MD5 or SHA1 hash algorithms may be used but must be consistent throughout the productions and communicated to counsel. |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-files/Attachments)** |
|---|---|---|---|---|
| Text Path | Text Path | Text | Relative path to multi-page (document level) extracted text file (or OCR where extracted text is insufficient or email contains redactions). | Relative path to multi-page (document level) extracted text file (or OCR where extracted text is insufficient or document contains redactions). |
| Native Path | Native Path | Text | Relative path to native email. | Relative path to native file. |
| File Name | File Name | Text | The complete title of an email if saved individually as its own file. | The complete title of a file and file extension. |
| File Size | File Size | Number | The size of the email if saved individually as its own file. | The size of the file measured in bytes. |